UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| ITELD, BERNSTEIN & ASSOCIATES, LLC | CIVIL ACTION |
|---|---|
| VERSUS | NO: 06-3418-SSV-SS |
| THE HANOVER INSURANCE GROUP, et al | |

## ORDER

PLAINTIFF'S MOTION FOR CONTEMPT, TO COMPEL AND FOR SANCTIONS (Rec. doc. 55)

**GRANTED IN PART, DENIED IN PART AND RESET**

Before the undersigned is the motion of the plaintiff, Iteld, Bernstein & Associates, LLC ("IBA"), for an order of contempt, to compel and for sanctions. IBA contends that the defendant, The Hanover Insurance Company ("Hanover"), did not fully comply with April 27, 2009 discovery order. Rec. doc. 54. (The "April 27 order.")

## BACKGROUND

IBA alleges that: (1) it operated a single business providing medical services from offices in Chalmette and New Orleans East; (2) it procured insurance through Eustis Insurance, Inc. ("Eustis"); (4) Hanover issued a policy with coverage for loss of business income; (5) the New Orleans East office sustained damage from wind; (6) the Chalmette office sustained damage from flooding; (7) because of the terms of the policy and the nature of its business, it should recover for all of its lost income less any income earned in a temporary location; and (8) Hanover has not paid the full amount due on the policy. Rec. doc. 1 (Attachment). Hanover contends that IBA was

entitled to business income coverage for the New Orleans East office but not the Chalmette office as it did not sustain damage from a covered peril at that office. Rec. doc. 45.

The trial is set for August 24, 2009, the pretrial conference is set for August 13, 2009, and the discovery deadline is July 14, 2009. Rec. doc. 33.

## IBA'S MOTION FOR CONTEMPT, TO COMPEL AND FOR SANCTIONS

The issues raised by IBA will be addressed in the sequence found in the April 27, 2009 order.

1.  <u>Hanover's affidavit on its document production</u>.

In response to IBA's first motion to compel (Rec. doc. 40), Hanover contended that, but for documents identified on a privilege log, it produced: (1) the underwriting file; (2) the claim file; (3) the certified copy of the policy for the period June 1, 2003 through June 1, 2007; and (4) photographs. Rec. doc. 45 at 4-6 and 10. It was unable to find insurance applications submitted by IBA from 2000 to date. Rec. doc. 45 at 11. IBA urged that Hanover's document production was incomplete. The April 27 order provides that:

> IBA has not demonstrated that Hanover's production of these documents is incomplete. It does not present documents obtained from its agent, Eustis, which were sent to Hanover but not produced by it. . . . Hanover, however, will be required to provide confirmation of its production.

Rec. doc. 54 at 2. Hanover was ordered to "produce an affidavit from an officer or managing agent certifying that it has made a diligent and complete search for documents relating to IBA. . ." <u>Id</u>.

Hanover provided an affidavit from Douglas Holbrook, vice-president for property claims, in which he states "on information and belief" Hanover had "performed a diligent search" for responsive documents and it produced the documents except for those identified in a privilege log. Rec. doc. 55 (Exhibit 2). IBA contends that: (1) the Holbrook affidavit is deficient because it was made "on information and belief;" (2) Hanover's document production is deficient because Eustis

2

produced applications and communications sent by it to Hanover which were not produced by Hanover; and (3) Hanover has acted in bad faith. Hanover responds that: (1) Holbrook's affidavit complies with the April 27, 2004 order; (2) the employees directly involved in the search could not sign the affidavit; and (3) the order did not provide that the affidavit be made on personal knowledge. Hanover is silent on the fact that Eustis produced documents which it was not able to produce. IBA replies that the Eustis production demonstrates that Hanover has not "produced numerous documents that are or were in its possession." Rec. doc. 72 at 2.

Holbrook's affidavit complied with the April 27 order. It is not deficient because it was made on information and belief. The order did not require the officer to personally conduct the search for the documents.

From the beginning Hanover reported that it was unable to find insurance applications submitted by IBA from 2000 to date. Rec. doc. 45 at 11. Eustis was not able to find all of the documents sought by IBA. The affidavit demonstrates that Hanover made a diligent search for the documents. IBA's request for further relief on this issue is denied.

2.  <u>Reinsurance documents withheld from production</u>.

In response to IBA's first motion to compel (Rec. doc. 40), Hanover responded that it withheld reinsurance documents because they were not relevant. Hanover was ordered to produce the reinsurance documents.

IBA reports that documents (HAN 0662-0685) were produced, but these reinsurance documents were improperly redacted. Hanover responds that it only redacted the premiums it paid for reinsurance and the names and policy numbers of insureds, other than IBA. Rec. doc. 65. It offers to produce the un-redacted documents for *in camera* inspection. This is not necessary. The

3

information on premiums paid for reinsurance and the identification of other insureds is not relevant to IBA's claims.

IBA also contends that the reinsurance documents are incomplete because they refer to only one of IBA's offices. It urges that: (1) if the reinsurance documents apply to both locations, Hanover should so state; (2) if they do not apply to both locations, either Hanover should produce the reinsurance documents for the second location or state that reinsurance was not procured on the second location. Hanover does not respond to this issue.

**Within seven (7) working days of the entry of this order, Hanover shall provide the clarification sought by IBA on the procurement of reinsurance on the second location and produce any reinsurance documents on the second location.**

3.  Post-loss documents withheld from production.

The April 27 order provides that:

> Hanover indicates that some of the post-loss documents were produced, for example HAN 0627-45, but others were not, for example HAN 0686-88. All post-loss documents in the underwriting file shall be produced.

Rec. doc. 54 at 3. IBA identifies thirteen groups which it contends should have been produced as result of this order. Rec. doc. 55 at 6-7. Hanover responds that these documents were produced. Rec. doc. 65 (Exhibit A). IBA's reply acknowledges receipt of these documents, but contends that Hanover has not produced post-loss documents relating to: (1) applications from Eustis to Hanover; (2) Hanover's risk assessment; and (3) un-redacted underwriting documents.

The April 27 order only required Hanover to produce all post-loss documents in the underwriting file. IBA's motion does not demonstrate that Hanover failed to comply with this provision of the April 27 order. IBA raised new issues about certain other post-loss documents.

4

      a.      <u>Post-loss insurance applications</u>.

It is not clear whether these documents were previously requested or whether Hanover has not been able to find them.  **Within seven (7) working days of the entry of this order, Hanover shall produce any applications for insurance from Eustis for IBA which were submitted after Hurricane Katrina or certify that after diligent search the documents could not be located.**

      b.      <u>Post-loss risk assessment</u>.

IBA reports that Hanover issued a notice of non-renewal dated June 1, 2007, which cited management of catastrophe exposures as the reason.  IBA's request for all documents related to this decision is denied.

      c.      <u>Post-loss redacted documents</u>.

IBA reports that on April 10, 2009, Hanover produced some post-loss underwriting documents, many of which were redacted on the basis of confidential or proprietary information.  **Within seven (7) working days of the entry of this order, Hanover shall submit a supplemental memorandum in support of its redaction from the documents produced on April 10, 2009.**

4.      <u>Interrogatory no. 3</u>.

In the original motion to compel, IBA requested that Hanover be ordered to provide the names and addresses for persons retained by it or acting on its behalf who inspected the IBA properties for any purpose.  The April 27 order provided that Hanover was to "supplement its responses with the addresses and telephone numbers and state that it has made a diligent search of its records for information responsive to this interrogatory."  Rec. doc. 3.  IBA reports that Hanover's response was deficient because: (a) it supplied a post office box address for Paul

5

Bordelon; and (b) it reported that the Joseph Andrews is no longer employed by it and his most recent address was at Hanover's office. Hanover contends that the order did not require it to provide IBA with a street address as opposed to post office box. It is not clear whether Hanover has a street address for Bordelon. Hanover reiterates that the most recent address for Andrews is his address at Hanover's office. Again it is not clear whether Hanover has any addresses for Andrews other than its office.

**Within seven (7) working days of the entry of this order, Hanover shall provide IBA with all last known contact information, including telephone and street addresses for Bordelon and Andrews and state the source of each address, for example Bordelon-employment application, dated _____ ___, 200_, or Andrews Form W-2, dated _____ ___, 200_.**

5. <u>Contempt and Sanctions</u>.

IBA's request for an order finding Hanover in contempt and for sanctions is denied. Hanover's request for sanctions is denied.

IT IS ORDERED that: (1) IBA's motion for contempt, to compel and for sanctions (Rec. doc. 55) is GRANTED in PART and DENIED in PART in accord with the terms of this order; and (2) IBA's motion is RESET in PART for submission on briefs upon receipt of Hanover's supplemental memorandum on the post-loss redacted documents.

New Orleans, Louisiana, this 13th day of July, 2009.

                                               **SALLY SHUSHAN**
                                        **United States Magistrate Judge**