UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ITELD, BERNSTEIN & ASSOCIATES, LLC                CIVIL ACTION

VERSUS                                             NO: 06-3418

THE HANOVER INSURANCE GROUP, ET AL.                SECTION: R(1)

**ORDER**

Before the Court is defendant's Motion for Partial Summary Judgment to Exclude Income Generated From Locations Other Than the Described Premises From Plaintiff's Business Income Claim. (R. Doc. 66.) Defendant's Motion is DENIED for the following reasons.

I.  **Background**

Defendant Hanover Insurance Company insured plaintiff's, Iteld, Bernstein & Associates, LLC (IBA), cardiology practice for Business Income loss at the time of Hurricane Katrina. As result of the Hurricane, IBA's Chalmette and New Orleans East clinics closed for several months. IBA's cardiologists were also unable

to visit patients or provide interventions at area hospitals in the months after Katrina.  IBA's "hospital practice" accounted for about ten to twenty percent of IBA's income, depending on the month.  The question before the Court is whether IBA can recover lost income attributable to its hospital practice under the Hanover policy.

IBA argues that the "Business Income" section of the Hanover policy covers their hospital practice.  "Business Income" is defined as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred . . . ."  (R. Doc. 66-4, Hanover Ex. "A," Policy, at HAN 1095.)  The policy provides that:

> (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .
> (b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. For purposes of this insurance, all recoverable loss ceases when the period of restoration ends.

(*Id.* at HAN 1094 – 1095.)  Hanover contends that hospital income is not covered under this provision.  Its argument turns mainly on the term "operations," which is defined as "business activities occurring at the described premises."  (R. Doc. 66-7,

Hanover Ex. "A," Policy, at HAN 1127.) IBA's two clinics are listed as "described premises" in the policy, but hospitals are not. (R. Doc. 66-3, Hanover Ex. "A," Policy, at HAN 1062.) Since the hospitals are not listed as "described premises," Hanover argues that "coverage only would be provided by the Policy's Business Income from Dependent Properties provisions – assuming that such locations even qualify as Dependent Properties." (R. Doc. 66-2, Mem. in Supp., at 9.)

Business Income loss from Dependent Properties is covered separately in the policy, which defines Dependent Properties as,

> the property operated by others whom you depend upon to:
> a. Deliver materials or services to you, or to others for your account;
> b. Accept your products or services;
> c. Manufacture products for delivery to your customers under contract of sale; or
> d. Attract customers to your business.

(R. Doc. 66-7, Hanover Ex. "A," Policy, at HAN 1126.) The Hanover policy provides the following Business Income coverage for Dependent Properties:

> (1) We will pay for the actual loss of Business Income (not including Extended Business Income), you sustain due to physical loss or damage at the premises of a "dependent property" caused by or resulting from a Covered Cause of Loss. The most we will pay under this Additional Coverage is $100,000, regardless of the number of "dependent properties" affected. The "dependent property" must be located in the coverage territory.

(R. Doc. 66-3, Hanover Ex. "A," Policy at HAN 1073.) This

coverage applies to dependent properties that are "[l]ocated at the same premises (grounds) as those shown in the Declarations" and property "that serves as a leader location-attracting customers to the premises" only. (R. Doc. 66-7, Hanover Ex. "A," Policy, at HAN 1126.)

Neither party has cited a case on point. But contrary to Hanover's argument, the policy does not prohibit IBA from recovering lost Business Income for hospital practice services, as long as IBA can demonstrate that the loss of hospital practice income is due to a necessary suspension of business activities that otherwise implicates its Business Income coverage.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

4

(1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**B.   Insurance Policy Interpretation**

The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332, and Louisiana state law applies to the insurance contract at issue. Under Louisiana law, an insurance policy is a contract that constitutes the law between the parties, and it must be interpreted in accordance with the general rules of contract interpretation set forth in the Louisiana Civil Code. *See Peterson v. Schimek*, 729 So. 2d 1024, 1028 (La. 1999) (citing La. Civ. Code art. 1983); *Ledbetter v.*

*Concord Gen. Corp.*, 665 So. 2d 1166, 1169 (La. 1996); *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736, 741 (La. 1994); *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988). The extent of insurance coverage is determined by the parties' intent as reflected by words in the policy. *See* La. Civ. Code art. 2045; *Peterson*, 729 So. 2d at 1028 (citing *Ledbetter*, 665 So. 2d at 1169). If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. La. Civ. Code art. 2046; *Pareti*, 536 So. 2d at 420. The policy must be construed as a whole, and one portion should not be construed separately at the expense of disregarding another. *Pareti*, 536 So. 2d at 420. If an ambiguity exists, the ambiguity must be construed in favor of the party seeking coverage. *Id.* The Court may not alter the terms of the policy under the guise of contract interpretation when the language of the policy is unambiguous. *Id.*

### III. Analysis

Hanover argues that IBA cannot recover for lost business income attributable to its hospital practice because the hospitals are not listed as "described premises" in the policy. Hanover's argument is short and can be excerpted almost in its entirety:

> The Policy's Business Income provision states that

6

> Hanover "will pay for the actual loss of Business Income you sustain due to the necessary suspension of the your 'operations' during the 'period of restoration.' The word 'operations' is defined in the Policy as 'your business activities occurring *at the described premises*.' Further, in order for Business Income to be triggered the suspension of operations 'must be caused by direct physical loss of or damage to property *at the describe premises*.'"

(R. Doc. 66-2, Hanover's Mem. in Supp., at 8)(emphasis in original)(footnotes omitted). Hanover concludes that "[a]t best, damage to a hospital where doctors routinely practice may be a basis for a claim for Business Income from Dependent Properties," but cannot be recovered under the Business Income coverage. (*Id.* at 8-9.)

IBA counters that the logic of Hanover's interpretation means that litigators would have no business income claim for lost billable time spent in court or at out-of-the-office depositions, *etc.* because these activities would not likely take place on "described premises." (R. Doc. 74, Mem. in. Opp., at 2.) While nothing prevents insurance companies from excluding such income, the Hanover Policy does not restrict recoverable Business Income to services that take place on described premises.

Substituting the definition of "operations" for the term, the Hanover Policy's Business Income coverage states, "We will pay for the actual loss of Business Income you sustain due to the

7

necessary suspension of your [business activities occurring at the described premises] during the 'period of restoration.'"  The Policy further requires that "The suspension must be caused by direct physical loss of or damage to property at the described premises."  As long as (1) a necessary suspension of business activities occurs on the described premises, and (2) the suspension is caused by a direct physical loss to the described premises, the actual loss of Business Income due to the suspension is recoverable.  While the suspension of business activities and the direct physical loss must take place on described premises, nothing restricts the recoverable Business Income to services taking place on described premises.

Further, the definition of "Business Income" refers broadly to any "Net Income . . . that would have been earned or incurred if no physical loss or damage had occurred . . . ."  Neither this definition nor the coverage provision prohibits the recovery of off-site lost business income as long as the loss is due to the suspension of business activities at the described premises.  Accordingly, IBA is not precluded from recovering lost income attributable to its hospital practice because the hospitals are not listed as described premises in the policy.

Hanover argues that this interpretation renders the Business Income from Dependent Properties coverage superfluous, but the

8

two coverages address different situations. The Dependent Property coverage is triggered when the insured suffers income loss "due to physical loss or damage at the premises of a 'dependent property.'" By contrast, the Business Income coverage is implicated when there is a suspension of operations at the described premises. A short example demonstrates that there will be no overlap between the two coverages in most cases: If the described premises catch fire, but the hospital does not, only the Business Income coverage is triggered and *vice-versa*. Both provisions are triggered only when a covered peril results in damage to both the described premises and the dependent property. Assuming the hospitals are dependent properties, there may be some coverage overlap in this case. This result, however, is neither surprising or controversial. IBA cannot recover twice for the same loss under these provisions, *see, e.g., Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 891869 (E.D. La. Mar. 21, 2007), but the policy provisions' overlap in some circumstances does not render either redundant or meaningless.

Finally, Hanover emphasizes the policy's use of the word "due," which it defines as "capable of being attributed." (R. Doc. 93)(*citing* Merriam-Webster's Collegiate Dictionary). Hanover apparently argues that lost income attributable to IBA's hospital practice is "[in]capable of being attributed" to the

9

suspension of business operations at the described premises. Hanover marshals no evidence, cites no law, and makes no effort to justify this restrictive view of the policy language. In any event, Hanover makes this argument for the first time in its Reply brief and arguments raised for the first time in a Reply brief are waived. *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th. Cir. 2005).

**IV. Conclusion**

For the reasons stated above, Hanover's Motion for Summary Judgment is DENIED.


New Orleans, Louisiana, this 12th day of August, 2009.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE